REYNOLDS ET AL. *v.* COPELAND.

No. 6706.

ACTION TO RECOVER POSSESSION OF PERSONAL PROPERTY.—*Pleading.—General and Specific Allegations of Title.*—Where a complaint, in an action to recover personal property, contains the usual allegations of such a pleading under the statute, and adds specific facts exhibiting the nature of the plaintiff's title, the specific facts will be looked to as determining the plaintiff's right to recover.

SAME.—*Pleading.—Fraudulent Representations.—Duress.*—A complaint to recover personal property alleged to have been obtained from plaintiff by fraud and duress, averring substantially, in detail, that the defendant

Reynolds *et al. v.* Copeland.

threatened to arrest, imprison and send plaintiff to the state-prison for the crime of rape; threatened to beat and wound him; refused to permit him to confer with an attorney or consult his friends; and that the defendant and another, by acts, threats and gestures, induced plaintiff to believe that they were armed with deadly weapons, and put the plaintiff in great fear; alleging also that the defendant knew that the plaintiff was not guilty of the offence charged, and that the property was surrendered because of such wrongful acts.

*Held,* that the complaint is not based upon fraudulent representations alone, but also upon duress; and the question whether such representations could or would not have misled the plaintiff, does not affect the sufficiency of the pleading.

*Held,* also, that the allegations of the complaint show such threats and means used as were calculated to produce fear, and thus overcome the will, and make the act of the plaintiff the result, not of his judgment, but of fear.

SAME.—*Rescission.—Demand.*—In such an action, the complaint need not show a rescission, nor a demand, on the part of the plaintiff.

SAME.—*New Trial.—Hearsay Evidence.*—It is a good cause for a new trial, in such an action, that the court, over defendant's objection, allowed a third party, a witness, to narrate a conversation which he had with A., who was in no way connected with the transaction, in which the latter, as the witness testified, stated that the woman, upon whom the plaintiff was accused of having committed the rape, had declared that the witness himself was the father of the illegitimate child to which she had given birth. Such evidence was clearly hearsay. Nor was it admissible as showing a conspiracy, there being no other evidence showing concert of action.

DURESS.—*Exchange of Property Procured by —Tender.— Value of Thing Obtained.*—If one who exchanges property desires to recover what he has surrendered, he must tender back what he received, although the exchange may have been an enforced one, produced by violence. If the plaintiff receives any thing of value, the maxim, *de minimis non curat lex,* is not applicable. The fact that defendant, upon demand, refused to surrender the property gotten by him, does not excuse a tender by the plaintiff of what he received.

From the Henry Circuit Court.

*M. E. Forkner* and *W. Grose,* for appellants.

*T. B. Redding, J. H. Mellett* and *E. H. Bundy,* for appellee.

ELLIOTT, J.—The amended complaint of the appellee,

who was the plaintiff below, is in two paragraphs, and in both are contained the usual allegations of a complaint under the statute, for the claim and delivery of personal property; but, in addition to these allegations, the first paragraph contains others, describing with particularity the nature of the claim and title of the plaintiff.

The first question with which we have to deal is one of pleading; for, if the complaint is good because of the general allegations made in accordance with the form prescribed by statute, then we need not give the questions presented by the demurrers to the complaint any further consideration, but if we are to hold that the specific allegations, describing the plaintiff's claim, control and qualify the general statements, then we are required to determine whether the specific allegations show a cause of action in the plaintiff. We think it must be held, that where there is a general claim of title, followed by a specific statement of the nature of the claim, the specific facts alleged must be sufficient to show title. If the party presents for the judgment of the court particular facts as constituting the foundation of his title, he must present such facts as, independently of the general allegation, show his claim of title to be well founded. This must be the rule, or we might otherwise have a complaint averring generally title in the plaintiff, but containing specific facts showing the claim to be utterly groundless. While a plaintiff may with safety adopt the statutory form, yet if he adds to such form specific facts, exhibiting the nature of his asserted title, he must state such facts as show his claim to rest on substantial grounds. We are, therefore, required to examine the specific allegations of this complaint and determine whether they show title in the plaintiff. A general summary of the facts pleaded will be sufficient to present the questions discussed by counsel.

The complaint describes several promissory notes and

mortgages securing them, which had been executed and delivered to the appellee, and which were his property and in his possession until obtained from him by the defendants. It is alleged that the notes and mortgages were obtained from the appellee by fraud and while he was under duress, and the facts alleged to constitute the fraudulent and wrongful acts of the appellant are stated substantially as follows:    That the defendant Calvin W. Reynolds did threaten to arrest, imprison, and send plaintiff to state-prison for the crime of rape; did threaten to beat and wound him; did refuse to permit the plaintiff to confer with an attorney or to consult with his friends; and that the said defendant and one William Reynolds did, by acts, threats and gestures, induce the plaintiff to believe that they were armed with deadly weapons, and that they did put the plaintiff in great fear.

It is also averred that the defendant knew that the plaintiff was not guilty of the offence charged, and that the instruments in controversy were surrendered because of such wrongful acts and upon no other consideration.

Counsel for the appellants, in their attack upon the complaint, urge that it is bad because the representation could not have misled or deceived the plaintiff, because he better than any one else knew whether the charge was true or false.    If the case stood upon the bare ground of fraudulent representation, the argument would be unanswerable, but it does not stand upon that ground alone.    A man accused of robbery may know perfectly well that the charge is utterly false, and yet may be induced by fear, produced by illegal means, to execute a contract which he may afterward avoid.    If this were not so, then an innocent man, unjustly accused of crime, would have no remedy, because in every case such a man must have known the falsity of the accusation. While the fact that a false accusation was made constitutes an element in the

principal charge made by the complaint, the sufficiency of complaint does not by any means depend upon that allegation.  The allegation really adds strength to those with which it is coupled, but even if insufficient, if considered by itself, does not carry the complaint down with it. The question with which we are to deal is not as to the effect of one or more detached allegations, but as to the effect of all the allegations of which the complaint is composed, taken together.  Taking all the allegations of the complaint, there appear to have been such threats and means used as were calculated to produce fear, and thus overcome the will, and make the act of the party the result, not of his judgment, but of fear.  There were threats of prosecution and imprisonment upon a charge of felony, and there were also acts indicating that the defendant Calvin W. Reynolds was armed, and that he would do the appellee great bodily injury.  Threats of imprisonment have often been held to constitute duress, and so also have threats to do great bodily harm.  The old cases so held, and the tendency of modern cases as said by Bronson, J., in *Foshay* v. *Ferguson*, 5 Hill, 154, is to overthrow everything founded upon fraud or violence.  *Vide* authorities in note to 18 Am. L. Reg., N. s. 748; *Whitefield* v. *Longfellow*, Ewell L. Cas. 767, and *n*; *James* v. *Roberts*, 18 Ohio, 548.  The case of *Bush* v. *Brown*, 49 Ind. 573, upon which appellant relies, is not in conflict with the doctrine here declared; upon the contrary it supports and enforces the same general principle. It may be, that, if the allegations of the threats to beat and wound the plaintiff were not in the complaint, it would be bad under the case last referred to, because it does not directly aver that the plaintiff was not guilty of the crime charged.  The allegation, that the defendants well knew that the plaintiff was not guilty of the said crime or charge, is not equivalent to an averment that he was not guilty; but, construing all of the

allegations of the complaint, as we must do, together, there can be no doubt that a good cause of action is stated.

The contention of counsel that the complaint is bad because it does not allege a rescission, and because no demand is averred, is not supported by the case to which reference is made, that of *McCoy* v. *Reck*, 50 Ind. 283. The complaint does not show any contract, and, where there is no contract, there can be no such thing as a rescission. The plaintiff did not, upon the theory of the complaint, voluntarily surrender his property, but his will and judgment were overpowered, and his property wrested from him, by what the law regards as force and violence.

Among the reasons assigned in appellants' motion for a new trial is one properly attacking the ruling of the court in admitting the testimony of one Kimbell. The court, over the objection of the appellants, permitted the witness to narrate a conversation which he had with one Lewis Reynolds, in which the latter, as the witness testified, stated that Dolly Reynolds, upon whom the appellee was accused of having committed the crime of rape, had declared that the witness, Kimbell, was the father of the illegitimate child to which she had given birth. This ruling was plainly erroneous. The appellants were not shown to have been in any way connected with Lewis Reynolds, nor was there any thing shown which could by any possibility make the appellants answerable for the statements of Lewis Reynolds. The testimony was clearly hearsay. Appellee insists that the testimony was competent because it tended to discredit the said Reynolds, who was afterward introduced as a witness, but this proposition is palpably incorrect. It is also insisted that the testimony was competent as tending to prove a conspiracy, but there is no other evidence showing any concert of action or collusion between the appellants and Lewis Reynolds. So far as the evidence shows, there was no

connection except that of kinship between Lewis Reynolds and the defendants, and from that alone no inference of collusion or confederation can arise. In legal contempla-·tion, Lewis Reynolds was a stranger to the appellants.

It appears from the evidence, that, at the time the appellants received the notes described in the complaint, they· paid to the appellee eight dollars in money. The sum demanded by appellants was $2,000, and the notes which they received exceeded this sum eight dollars, and this the appellee retained and did not tender back before the action was commenced. The appellee insists that no tender of money or property received is necessary in a case like the present, where one is seeking to recover property obtained from him by duress. This contention can not be successfully maintained. If one who exchanges property desires to recover what he surrendered, he must tender back what he received, although the exchange may have been an enforced one, produced by violence. If nothing was received, then there would be no necessity for demanding a rescission, and this is the question presented by the complaint, and which we have already considered; but the question arising on the evidence is quite a different one, for the evidence shows the receipt and retention of something of value. It is, however, contended with much plausibility, that the sum of eight dollars is so small in comparison with the principal sum involved, that we ought not to suffer the failure to tender it back to reverse the judgment. The familiar maxim, *de minimis non curat lex*, might apply, if the sum of eight dollars was an error in the amount of recovery. .The retention, however, of that sum, by one who claims the return of property wrongfully taken from him, presents quite a different question from that which would be presented by an error in assessing damages. The retention of that sum unexplained is an affirmance of the transaction which the

action is intended to annul. The act of retaining possession of any thing of value is always construed as an act of affirmance, and no man can have relief against a transaction which he has himself affirmed by an act of his own. It is not so much the value of the thing retained, which gives significance and importance to the act of retention, as it is the fact that the only reasonable inference which can be drawn from such an act is, that it is an affirmance of the transaction. The question is, was something of value retained? not what was the value of the thing kept back by the party receiving it. Value can not have a controlling force. There is really no wrong in the party's refusing to surrender property until he has received all that he gave in exchange, be that much or little.

Counsel argue, that as a demand was made, and met by a refusal, the appellee was excused from tendering back what he had received. The case of *Bartlett* v. *Adams*, 43 Ind. 447, we recognize as sound, but it has no application here ; for, in this case, there was no specific ground upon which the refusal was placed. All the record shows upon the subject is embraced within the words, " Defendants admit demand for notes before suit was brought."

It is not to be inferred from what has been said upon this subject, that the question as to whether the appellee may yet make the tender of eight dollars and maintain an action is decided. That question is not before us and is not decided.

For the error in overruling the motion for a new trial, the judgment must be reversed.

Judgment reversed, at costs of appellee, cause remanded with instructions to sustain appellants' motion for a new trial.